UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

    v.

JOSE M. CACERAS,

        Defendant.

24-CR-15
DECISION & ORDER

---

On July 24, 2024, a jury convicted the defendant, Jose M. Caceras, of possessing with intent to distribute at least fifty grams of methamphetamine (count 1), possessing MDMA (lesser included offense of count 2); possessing with intent to distribute fentanyl (count 3); and maintaining drug-involved premises (count 4).  *See* Docket Item 97.  The jury also found that Caceras had been convicted of two prior drug felonies, was incarcerated for more than twelve months for each of those offenses, and was released from incarceration on each of those offenses within fifteen years of his committing the crime charged in this case.  *See* Docket Item 100.  Those findings subjected Caceras to enhanced penalties under 21 U.S.C. § 841(b)(1)(A)(viii).

On March 4, 2025, Caceras moved under Federal Rule of Criminal Procedure 29 for this Court to "vacate the jury's findings and rule that the one or both of the predicate convictions do not trigger sentencing enhancements."[1]  Docket Item 110 at 2.[2]  More specifically, Caceras argues (1) that the government failed to prove the relevant facts

---

[1] Caceras did not move under Rule 29 for a judgment of acquittal on any of the substantive counts or for a new trial under Rule 33.

[2] Page numbers in docket citations refer to ECF pagination.

regarding his 2015 Pennsylvania conviction and (2) that "some of the testimony and documents should not have been admitted and, absent the improper admission of this evidence, the government failed to prove both predicate convictions."[3] *Id.*

The government responded to Caceras's motion, Docket Item 116, and Caceras replied, Docket Item 117. This Court heard oral argument and reserved decision. *See* Docket Item 119. For the reasons that follow, after careful consideration, the Court denies Caceras's motion.

## LEGAL PRINCIPLES

### I.   RULE 29

A defendant seeking a judgment of acquittal faces a heavy burden: A court can grant a Rule 29 motion only if no "rational trier of fact could have found the essential elements of the crime established beyond a reasonable doubt." *United States v. Cacace*, 796 F.3d 176, 191 (2d Cir. 2015) (quoting *United States v. Moore*, 54 F.3d 92, 100 (2d Cir. 1995)). Stated another way, "[a] court may enter a judgment of acquittal only if the evidence that the defendant committed the crime alleged is 'nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt.'" *See United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999) (quoting *United States v. White*, 673 F.2d 299, 301 (10th Cir. 1982)). In conducting its analysis, the Court "must view the evidence in the light most favorable to the government, crediting every

---

[3] Caceras does not challenge the sufficiency of the evidence admitted at trial to establish the prior federal conviction. *See* Docket Item 110 at 8-19. Rather, he argues that some of that evidence was improperly admitted and that the evidence would have been insufficient had it not been. *Id.* at 16-19.

inference that could have been drawn in the government's favor." *United States v. Pauling*, 924 F.3d 649, 656 (2d Cir. 2019) (quoting *United States v. Martoma*, 894 F.3d 64, 72 (2d Cir. 2017)).

## II.   SENTENCING ENHANCEMENT UNDER 21 U.S.C. § 851

Under 21 U.S.C. § 841(b)(1)(A)(viii), a defendant convicted of an offense involving at least fifty grams of methamphetamine under 21 U.S.C. § 841(a)(1) is subject to enhanced mandatory minimum and maximum penalties if the defendant previously was convicted of one or more "serious drug felony" offenses. More specifically, a defendant without any prior conviction for a serious drug felony is subject to a mandatory minimum term of imprisonment of ten years. *Id.* But a defendant who has previously been convicted of one "serious drug felony . . . shall be sentenced to a term of imprisonment of not less than [fifteen] years." *Id.* And a defendant who has two or more serious drug felony convictions "shall be sentenced to a term of imprisonment of not less than [twenty-five] years."[4] *Id.*

A "serious drug felony" is:

(i) an offense under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46 [46 USCS §§ 70501 et seq.], for which a maximum term of imprisonment of ten years or more is prescribed by law; or

(ii) an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law.

---

[4] The maximum term of imprisonment is life regardless of the number of prior convictions. *See* U.S.C. § 841(b)(1)(A).

3

18 U.S.C § 924(e)(2)(A). Additionally, the defendant must have "served a term of imprisonment of more than [twelve] months" for the conviction, and the defendant's "release from any term of imprisonment [must have been] within [fifteen] years of the commencement of the instant offense." 21 U.S.C. § 802(58).

When the government seeks a sentencing enhancement under section 841(b)(1)(A), it must provide notice to the defendant though an information. 21 U.S.C. § 851(a). In addition to giving notice, the government must prove the existence of any 851-predicate conviction beyond a reasonable doubt. *Id.* § 851(c)(1).

## **DISCUSSION**[5]

The government alleged that Caceras had at least two prior convictions for "serious drug felony" offenses that justified a sentencing enhancement. More specifically, the government alleged that Caceras had been convicted "on or about January 22, 2014, in the Northern District of Ohio" for a violation of 21 U.S.C. § 846 and "on or about July 17, 2015, in Warren County, Pennsylvania[,]" for a "violation of PA Stat § 780-113(a)(30)." Docket Item 47 at 1.

So as not to prejudice the jury with evidence of prior convictions, the Court bifurcated the trial. After convicting Caceras of possessing at least fifty grams of methamphetamine with intent to distribute, the jury heard evidence of Caceras's prior convictions in a second phase of the trial ("Phase II"). The jury then deliberated on the prior convictions and found beyond a reasonable doubt that Caceras had been

---

[5] The Court assumes the reader's familiarity with the factual background and will recount the facts only as necessary to explain its decision.

4

convicted of both prior crimes, had been incarcerated for more than twelve months on each of them, and had been released from incarceration on each crime within fifteen years of his committing the crime charged in count 1 of the indictment. *See* Docket Item 100.[6]

Caceras makes two arguments in support of his motion. First, he contends that "[t]he proof the government introduced regarding the 2015 Pennsylvania conviction was insufficient as a matter of law." Docket Item 110 at 8 (bold omitted). Second, he says that "[t]he Court improperly admitted several [g]overnment [e]xhibits and permitted testimony from a witness who was not on the government's witness list." *Id.* at 16 (bold

---

[6] The Court notes that there was a typographical error on the Phase II verdict form: it asked whether Caceras had been convicted of a violation of Pennsylvania Code 35 P.S. Section 780-113(a)(3) instead of (a)(30). *See* Docket Item 100 at 2. Because no one raised this issue, to be entitled to any relief, Caceras would need to demonstrate that there is "a reasonable probability that the error affected the outcome of the trial." *See United States v. Rivera*, 2012 WL 2339318, at *15 (E.D.N.Y. June 19, 2012) (quoting *United States v. Cain,* 671 F.3d 271, 287 (2d Cir. 2012)), *aff'd*, 799 F.3d 180 (2d Cir. 2015). Here, while the typographical error is unfortunate, it is hard to imagine how the jury might have been confused or misled by it. The jury was charged on the correct offense and heard evidence about only that offense—section (a)(30)—and not section (a)(3). And there is no reason to believe that the jury might have found that Caceras violated section (a)(3)—prohibiting "[t]he dissemination or publication of any false or materially misleading advertisement"—which has nothing to do with drugs. Rather, it appears that the jury, the parties, and the Court simply missed what was clearly a mistake. *See United States v. Davis*, 841 F.3d 1253, 1262 n.11 (11th Cir. 2016) ("It strikes us as more probable that the jury did not even notice that Count 7 had been incorrectly described as 'robbery' on the verdict form."). The Court therefore finds there is not a reasonable probability that the typographical error affected the verdict. *Cf. id.* at 1261 (rejecting defendant's argument that amended judgment that corrected error in verdict form "did not correct a clerical error, but rather . . . constituted a substantive alteration that prejudiced them"); *Rivera,* 2012 WL 2339318, at *14-15 (finding no reasonable probability of error based on "inconsistent citations in the written jury charge provided to them and on the verdict sheet, i.e., to *18* U.S.C. § 1324 instead of *8* U.S.C. § 1324").

5

omitted). And, Caceras contends, "[t]he cumulative effect of these erroneous rulings offended [his] substantial rights . . . and warrants reconsideration." *Id.* (bold omitted).

The Court notes that the government disclosed the exhibits at issue on its initial exhibit list filed more than a month before trial began, *see* Docket Item 32 at 5, but Caceras did not raise his objections in his motions in limine or otherwise before the Phase II trial. So both the Court and the government were caught off guard and pressed for time in evaluating Caceras's arguments. Caceras explains, however, that if he had raised these objections sooner, then "the government would have [had] sufficient time to correct the flaws in its presentation and gather the witnesses and properly authenticated documents it did not possess," which "would [have been] to [his] detriment." Docket Item 110 at 16-17.

In sum, Caceras does not contest the facts of his prior convictions per se: the question before the Court is whether the evidence submitted at trial was properly admitted and proved the convictions beyond a reasonable doubt. The Court has carefully analyzed that question and, for the reasons that follow, finds that the government met its burden based on properly submitted evidence.

## I.   2015 PENNSYLVANIA CONVICTION

### A.   Fact of Conviction

To prove the 2015 Pennsylvania conviction, the government introduced Exhibit 58A, which included (1) a criminal complaint outlining charges filed against Caceras on October 19, 2010; (2) a criminal information dated December 17, 2010, charging six counts; and (3) a sentence order, dated July 17, 2015, as to count 1. Gov. Ex. 58A. As Caceras correctly observes, however, the government did not introduce a "certificate of

disposition reflecting a conviction or any other minute entries by the court demonstrating a conviction." See Docket Item 110 at 8-9.

Caceras says that the documents the government introduced "do not prove the existence of a conviction beyond a reasonable doubt." *Id.* at 9.  More specifically, he says that "[p]arts (a) and (b) of the document do not (and cannot) reflect information regarding a conviction because these documents are charging instruments only." *Id.* Likewise, he says that "[a]s for the sentencing order, while it does reflect information regarding a sentence adjudged, it does not note the type of conviction and the date of conviction in the case." *Id.*

This Court disagrees and finds that the documents submitted by the government were sufficient for a reasonable juror to find beyond a reasonable doubt that Caceras was convicted of possessing with intent to deliver narcotics in violation of Pennsylvania Code 35 P.S. Section 780-113(a)(30).  In particular, the sentencing document provides that "*as to count 1, possession with intent to deliver*, the defendant is sentenced as follows."  Gov. Ex. 58A at 10 (capitalization omitted; emphasis added).  And the information states that count 1 charged possession with intent to deliver in violation of "35 P.S. § 870-113(a)(30)," a felony.  Gov. Ex. 58A at 9.  A defendant cannot be sentenced on an offense unless he has been convicted of it.  Thus, taking those two documents together, and drawing all inferences in favor of the government, *see Pauling*, 924 F.3d at 656, the jury could easily conclude beyond a reasonable doubt that Caceras had been convicted of possession with intent to deliver, a felony under section 780-113(a)(30) of the Pennsylvania code.

## B. Serious Drug Felony

Caceras's next argument is that "the proof adduced at Phase II does not prove beyond a reasonable doubt that the 2015 Pennsylvania conviction meets the definition of a 'serious drug felony.'" Docket Item 110 at 9. Caceras concedes, however, that under *Almendarez-Torres* v. *United States*, 523 U.S. 224 (1998)—which currently binds this Court—a judge may "determine what crime, with what elements, the defendant was convicted of" for a sentencing enhancement. *See Erlinger v. United States*, 602 U.S. 821, 838 (2024) (quoting *Mathis v. United States*, 579 U.S. 500, 511-12 (2016)); *see also* Docket Item 117 at 1 (Caceras's acknowledging that "*Almendarez-Torres* . . . currently forbids" argument that government should have presented proof regarding the crimes and elements of conviction). Caceras has preserved this argument in the event that *Almendarez-Torres* is later overturned. But based on binding precedent, this Court rejects the argument that the government was required to prove to the jury that the predicate crimes were "serious drug felony" offenses.

## C. Imprisonment Term of More than Twelve Months and Release within Fifteen Years of Offense of Conviction

Finally, Caceras contends that "[t]he government presented insufficient evidence that [he] served more than [twelve] months imprisonment in the 2015 Pennsylvania case." Docket Item 110 at 10 (bold omitted). And he says that "[t]he evidence did not prove when [his] Pennsylvania term started or ended or whether he was released within [fifteen] years of committing the misconduct in this case." *Id.* at 16 (bold omitted). Again, drawing all inferences in the government's favor as it must on a Rule 29 motion, the Court finds that the evidence was sufficient for the jury to make the findings it did.

8

In particular, the sentencing document the government submitted stated that Caceras was "committed to a State Correctional Institution for a minimum period of twenty-four (24) months to a maximum period of sixty (60) months." Gov. Ex. 58A at 10. Absent any other evidence, the jury could reasonably infer that he in fact served at least the lower end of that term.

The sentencing document also states: "This Sentence commences this date"—that is, July 17, 2015. *See id.* at 10-11. Count 1 of the indictment alleged that Caceras possessed methamphetamine with the intent to distribute it on or about February 27, 2023. *See* Docket Item 11 at 1. Because the date the sentence began in the Pennsylvania case was only eight years before the crime charged in count 1 here, Caceras's release from prison necessarily was within fifteen years of the criminal conduct for which Caceras was convicted in this case.

Moreover, the sentencing document also noted that Caceras's sentence on the Pennsylvania conviction was to "run concurrent with [his] New York State Sentence and his Federal Sentence." Gov. Ex. 58A at 10. And the sentencing transcript from the federal case proved that on January 22, 2014, Caceras was sentenced to 100 months on his prior federal case. Ex. 60A at 1, 36. That—combined with testimony from United States Probation Officer Janelle Dzina that Caceras began his term of supervised release on July 26, 2022, *see* Docket Item 113 at 5—made clear that Caceras was incarcerated on his federal crime since sometime before his Pennsylvania sentence was imposed until July 2022. This, too, supports the jury's inference that Caceras served more than twelve months on his Pennsylvania crime and was released within fifteen years of the current conduct for which he was on trial.

9

\* \* \*

For all those reasons, this Court finds that the evidence was sufficient to support the jury's findings regarding the 2015 Pennsylvania conviction.

## II. PHASE II EVIDENCE

In addition to challenging the sufficiency of the evidence with respect to his 2015 Pennsylvania conviction, Caceras argues that "[t]he Court improperly admitted several [g]overnment [e]xhibits and permitted testimony from a witness who was not on the government's witness list." Docket Item 110 at 16 (bold omitted). Caceras argues that "[t]he cumulative effect of these erroneous rulings offended [his] substantial rights . . . and warrants reconsideration." *Id.* (bold omitted).

As a threshold matter, the government argues that Caceras's arguments about this Court's evidentiary rulings are improper on a Rule 29 motion. *See* Docket Item 116 at 10. Indeed, the only ground on which a "Rule 29 motion for acquittal may be granted [is that] the evidence against a defendant is insufficient." *United States v. Jabali*, 105 F. App'x 311, 313 (2d Cir. 2004) (summary order) (collecting cases). Thus, Rule 29 "is not an open-ended opportunity to relitigate unfavorable rulings." *United States v. Goklu*, 2023 WL 184254, at \*4 (E.D.N.Y. Jan. 13, 2023); *see also United States v. Wade*, 2011 WL 3800037, at \*5 (W.D.N.Y. Aug. 26, 2011) ("Rule 29's purpose is to challenge the sufficiency of the evidence, not its admissibility.").

This Court agrees that these types of challenges typically "may be resolved on appeal" but do not align with "the purpose of a Rule 29 motion." *See Wade*, 2011 WL 3800037, at \*5. But—particularly given the time pressures of the rulings made during the Phase II trial—the Court will treat Caceras's motion as both a Rule 29 motion and a

10

motion to reconsider. And in its discretion, the Court will reconsider the challenged evidentiary rulings now.

### A. Exhibits 56, 56A, 57, and 57A

The Court admitted "exhibits documenting two prior convictions in New York, one involving a 2010 conviction that was resentenced following a violation of probation to two years of imprisonment on 10/15/[2012] . . . and another involving a 2011 conviction that was sentenced to four (4) years of imprisonment on 10/15/2012." *See* Docket Item 110 at 17-18; *see also* Gov. Exs. 56, 56A, 57, and 57A. Caceras contends that admitting those exhibits "prejudiced [him] because his 2010 conviction ([Exhibits] 56 and 56A), even after resentencing, did not cause [him] to be in custody in July 2015 or thereafter (when his Pennsylvania case was sentenced) because his two-year term expired on 10/15/2014." Docket Item 110 at 18. "As such," Caceras argues, "the jury learned of another conviction on [his] record that was not relevant nor noticed in the 851 [i]nformation." *Id.*

Even assuming that Caceras is correct that the relevance of those exhibits ended up being minimal, any error in admitting them was harmless. *See United States v. Mercado*, 573 F.3d 138, 141 (2d Cir. 2009) ("An erroneous ruling on the admissibility of evidence is harmless if the . . . court can conclude with fair assurance that the evidence did not substantially influence the jury." (quoting *United States v. Jackson*, 301 F.3d 59, 65 (2d Cir. 2002))). First, the Pennsylvania sentencing document noted that the sentence was to "run concurrent with [Caceras's] New York State Sentence." Gov. Ex. 58A at 10. So the jury already was aware from that document—which clearly was admissible—that Caceras also had a New York State conviction. Moreover, by the time

11

the jury saw these documents, it already had convicted Caceras of the crimes at issue in this case. The only questions before the jury in Phase II were whether the documents and testimony submitted by the government established Caceras's Pennsylvania and federal convictions and sentences. The Court fails to see how knowledge of another state conviction would substantially influence the jury in those inquiries.

### B. Exhibit 58A

Caceras also challenges the admission of Exhibit 58A. More specifically, he says that "the Court chose to admit the entirety of [Exhibit 58A,] which contained irrelevant and prejudicial materials, such as the charging documents and the complaint spelling out the facts of the offenses," which "are not relevant to 851 proceedings." Docket Item 110 at 17. This Court disagrees. As explained above, the charging documents were relevant in that they clarified information in the sentencing document. But in any event, even if Caceras were correct on relevance, the Court sees no prejudice—let alone prejudice sufficient to show that the result would have been different.

### C. Exhibit 58B

Caceras next argues that "[t]he Court also admitted [Exhibit] 58B"—various documents regarding Pennsylvania detainers sent to New York State—"when the documents lacked proper authentication." *Id.* at 18. More specifically, as Caceras notes, *id.* at 12-13, Exhibit 58B does not include the seal or certification required to self-authenticate under Federal Rule of Evidence 902. Instead, this Court admitted Exhibit 58B under Federal Rule of Evidence 901(b)(7), which provides that "[e]vidence that . . .

12

a document was recorded or filed in a public office as authorized by law[] or [that] a purported public record or statement is from the office where items of this kind are kept" can "satisf[y] the [authentication] requirement." Fed. R. Evid. 901(b)(7); see Docket Item 112 at 8-11, 40-41.

With the benefit of time and hindsight, this Court agrees with Caceras that the government did not submit evidence sufficient to authenticate Exhibit 58B. Because the exhibit was not self-authenticating under Rule 902, some "extrinsic evidence" was required "for authentication." *See Lachira v. Sutton*, 2007 WL 1346913, at *4 (D. Conn. May 7, 2007). For example, the testimony of a witness who obtained the documents from the Warren County Clerk's office likely would have been sufficient. *See United States v. Lita*, 800 F. App'x 8, 11 (2d Cir. 2020) (summary order) ("Public records are regularly authenticated by proof of custody, without more." (citation omitted)). But the evidence *within* the document, such as the file stamp, was insufficient.

That being said, the Court finds that the result would not have been different without Exhibit 58B. As explained above, this Court finds that the jury could conclude beyond a reasonable doubt that Caceras served more than twelve months on his Pennsylvania conviction from exhibits that were properly admitted. Nor does Exhibit 58B have any information that was prejudicial to Caceras. And for those reasons, any error was harmless.

### D. Exhibit 60B (Presentence Investigation Report)

Caceras also challenges this Court's admission of Exhibit 60B: the Presentence Investigation Report ("PSR") from Caceras's prior federal case in the Northern District of

13

New York.  *See* Docket Item 110 at 18.  More specifically, he raises two issues: authenticity and hearsay.  *See id.*

    **1.**    **Authenticity**

The government initially offered Exhibit 60B "as self-authenticating."  *See* Docket Item 111 at 2.  In response, Caceras noted that this exhibit could not be admitted under Federal Rule of Evidence 902(11) (certified domestic records of a regularly conducted activity) because it did not have "a certification of the custodian or another qualified person" as required by that rule.  *See* Docket Item 111 at 2-3.  The government then changed course and offered Exhibit 60B through the testimony of United States Probation Officer Peter Lepiane.  *See* Docket Item 112 at 84-94.  Although the government did not cite the specific rule, *see id.*, for the reasons that follow, this Court finds that Lepiane properly authenticated Exhibit 60B under Rule 901(b)(1).  *See* Fed. R. Evid. 901(b)(1) (providing that document can be authenticated by "testimony of a witness with knowledge . . . that an item is what it is claimed to be" (bold and capitalization omitted)).

Lepiane testified that Exhibit 60B was "the presentence report that was prepared in the Northern District of Ohio for José M. Caceras, Jr.," which Lepiane recognized "because [he] work[ed] with these kind of documents" as "part of [his] job."  Docket Item 112 at 85.  Lepiane further testified that the Probation Office "received this from the Bureau of Prisons as part of an investigation for relocation to reside in our district on supervised release once [Caceras was] released."  *Id.; see also id.* at 87 ("Q. Now Mr. Lepiane, with respect to Government Exhibit 60B, could you remind us where you received that exhibit from?  A. From the Bureau of Prisons.  Q. And you received that

14

directly from the Bureau of Prisons? A. Yes. Q. And then at that point, was it made a part of your U.S. Probation file? A. Yes."). Indeed, the Court specifically asked Lepiane: "Are you sure that this copy that we're looking at right now is the very copy that your office received from the Bureau of Prisons?" *Id.* at 93. And Lepiane responded: "Yes, I printed it myself[.]" *Id.*

That testimony is sufficient to clear the relatively low bar of Rule 901. *See United States v. Dhinsa*, 243 F.3d 635, 658 (2d Cir. 2001) (explaining that "Rule 901 does not erect a particularly high hurdle, and the proponent of the evidence is not required to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be" (internal citations and quotation marks omitted)). Contrary to Caceras's argument, *see* Docket Item 110 at 18, there is no requirement that Lepiane be "a custodian of records for the [Bureau of Prisons]" to authenticate a document that Lepiane said he recognized. *See* Fed. Rule Evid. 901(b)(1). Of course, Caceras was free to argue that the evidence did not show the document to be what it purported to be. But as far as clearing the hurdle of Rule 901, the PSR was properly authenticated.

### 2. Hearsay

Caceras next argues that even if it was properly authenticated, the contents of the PSR constitute inadmissible hearsay. *See* Docket Item 110 at 18. And Caceras says that "[a]dmission of this report was prejudicial to [him] because it provided hearsay information to the jury regarding his New York State convictions." *Id.* The government counters that Caceras adopted the contents of the PSR at his 2014 sentencing in the Northern District of New York federal case, and that the PSR therefore constitutes an

15

admission of a party, which under Federal Rule of Evidence 801(d)(2) is not hearsay. *See* Docket Item 112 at 17-20.

The question of whether Caceras adopted the contents of the PSR such that he admitted everything in the report is a close one.  On the one hand, Caceras's counsel did not object to the relevant portions of the PSR.  *See* Gov. Ex. 60A (sentencing transcript) at 2-10.  Admissions of an attorney in the scope of the attorney's representation of a client can be admissible against the client under Rule 801(d)(2). *See Hough v. United States*, 253 F. Supp. 3d 560, 566 (W.D.N.Y. 2017).  And Caceras himself affirmed that he had had sufficient time to go over the report with his attorney. *See* Gov. Ex. 60A at 3.

That being said, the government has not cited—nor has the Court been able to find—any cases in which the contents of a prior PSR were admitted against a defendant under Rule 801(d)(2) based on the defendant's failure to object.  And the court in Caceras's other federal case did not directly ask, as this Court does at its sentencings, whether Caceras adopted and agreed with the facts in the report, *see* Gov. Ex. 60A; instead, it asked only whether he had had sufficient time to review it, *see id.* at 3.  What is more, the court did not directly ask Caceras's attorney to affirm everything in the report to which Caceras did not object.  So this Court is concerned about finding that the failure to object—without more—can constitute an admission.

Ultimately, however, all that is of no moment.  As explained above, there was sufficient evidence without the PSR for the jury to find the necessary facts on the Pennsylvania conviction beyond a reasonable doubt.  And the Court finds that Caceras cannot show that the PSR's describing Caceras's New York State conviction was

prejudicial because, as noted above, (1) the Pennsylvania sentencing document already mentioned a New York State conviction, and (2) the fact that Caceras had another conviction was not prejudicial in the context of the findings the jury was asked to make in Phase II.

### E.     Testimony of Elizabeth Burger

Finally, Caceras contends that this Court erred in allowing an employee of the Clerk's Office who was not on the government's witness list, Elizabeth Burger, to testify. *See* Docket Item 110 at 17.  Burger's testimony "permitted the government to introduce [Exhibit] 64A through [Exhibit] 64F," Caceras says, which "helped the government establish that [Caceras's] 2014 federal conviction . . . met the definition of a 'serious drug felony' and . . .  the duration of [his] prison term [was] (more than [twelve] months)." *Id.*

Caceras suggests that allowing Burger to testify was a "concession" the Court made to the government because the Court "[f]ear[ed] that the jurors were waiting too long." *See id.*  Not so.

As noted above, Caceras "strategically" chose to wait until the last minute to object to the government's exhibits.  *See id.*  When it arrived at the Phase II trial, the government did not expect those objections.  While the Court respects the position of Caceras's counsel—that waiting to make this objection was justified because it preserved his client's rights—he cannot have it both ways: either the defense raises the issue in time for the government to include the necessary witness on the pretrial witness list or the government is entitled to add a witness to the list to address a belated objection.  *See United States v. Ulbricht*, 2015 WL 413318, at *6 (S.D.N.Y. Feb. 1,

17

2015) (explaining that "the rules do not allow trial by ambush"), *aff'd*, 858 F.3d 71 (2d Cir. 2017). Any other ruling would simply be unfair.

In sum, this Court does not believe that it abused its discretion in permitting the government to call Burger to testify even though she was not on the witness list.

## **CONCLUSION**

For all those reasons, this Court DENIES Caceras's motion to vacate the jury's finding on his predicate convictions under Rule 29, Docket Item 110. The Court will issue a separate order to schedule sentencing.

SO ORDERED.

Dated:	December 30, 2025
	Buffalo, New York


	 */s/ Lawrence J. Vilardo*
	LAWRENCE J. VILARDO
	UNITED STATES DISTRICT JUDGE